Case 19-2311, USA v. Andre Watson. Oral argument, 15 minutes per side. Mr. LoSavio for the appellant. Thank you, Deputy Fultz. May it please the court. Counsel for the United States, I'm Michael LoSavio, appointed for Mr. Watson for his case out of Detroit. I'm reserving four minutes for rebuttal, should that be needed. And just two housekeeping measures really quick. One is that I believe there is a pending case to be heard en banc regarding some of these jurisdictional issues. It was United States v. Small. I believe Judge Clay was on the original panel. And I believe now it's going to be reheard. But again, it deals with these issues as to how broad will jurisdiction be under the Commerce Clause to give the federal government the power to prosecute. The other, just to be clear, is that it's been suggested that Mr. Watson has argued that he shot Wallace, the decedent here, to keep him from testifying in a federal matter. Actually, the statements in the brief were that this may have been a motivation for the big guy, Belcher. Except all we know is that Belcher wanted to have Wallace, another drug dealer, killed because he was, quote, messing with his money. Because this is an interesting issue of criminal organization. There were multiple different commercial operations that these not clear, and we suggest not even shown, that this was part of a drug conspiracy. In fact, and in retrospect, I should have made an organizational chart, Belcher and Wallace were partners on a car fraud car leasing scheme. And thus, their dispute would probably have been on a joint drug conspiracy. Although there is some testimony that Wallace had given Belcher some rather poor quality narcotics, and that may have irritated. What do you do with the standard of review? Any rational jury could have found that it was a drug conspiracy. And there is testimony, as you just mentioned, from Bailey, that at least one of the potential reasons, that he listed several, I think, in his testimony, but at least one of the potential reasons was drug related. Isn't that enough for a rational jury to conclude that it was, the shooting was motivated by the drug conspiracy? Forgive me. I would argue we would want more than that. But even conceding that here, that would be sufficient to convict Belcher. But what was simply not shown was that Watson was part of Belcher's drug conspiracy. And there is, and it would have been a simple question to ask. It could have asked Bailey, could have asked Brown. What did Watson do in relation to the drug conspiracy of Belcher or Wallace? Well, wasn't there some testimony that he was, Mr. Watson was an enforcer for Belcher's drug trafficking activities? I mean, there is some evidence there that he was involved. And so, as Judge Murphy said, the question is, is there enough evidence that a jury could reasonably conclude that he might have been guilty in that respect? Yes. And I would respectfully disagree, Judge Clay. The testimony, and this again, this is like this strange gap in these many days of testimony, these millions, many volumes of transcript. There was testimony that Watson was an enforcer for Belcher. But Belcher was running a variety of illegal schemes. They were engaged in tax, Belcher was engaged in tax fraud, got engaged in the auto fraud leasing business with Bailey and Wallace, which I, again, the best inference is the conflict between Belcher and Wallace is over what they were doing together. And they were both drug dealers, but they had their own operations. So, their drug conspiracies weren't even combined with each other. They were all separate. Now, so when the witness testifies, when Bailey testifies that Watson was Belcher's enforcer, okay, all right, what did he enforce? That question was never asked. Was it relating to the tax fraud schemes? Was it relating to the auto leasing schemes? There was testimony that Mr. Watson was a car thief. That was, I guess, payment. And okay, was there an auto ring going on? Again, I don't know, because it's not in the record. What is interesting- Do you think you needed that express testimony? I thought under the rational, under the Jackson standard, the jury is allowed to make reasonable inferences. And if you have testimony that Belcher wanted Wallace dead because of drugs, I think Bailey also testified that he saw Watson at Belcher's, what he called like a stash house, gun. It seems, it doesn't strike me as unreasonable for a jury to infer there that maybe he was an all-consuming or all-type enforcer, which would necessarily include the drug dealing. Um, well, it's like Watson being seen at one of the drug houses. This court has, you know, set some limits on it, saying simple association is not enough to show a conspiracy. So, and I would say simply being, quote, an enforcer is not enough unless you say an enforcer for what? Particularly in a case like this, where you have these broad, these are, these are, you know, these guys are criminal conglomerates. One bought, you know, Wallace and Belcher and Bailey. What, which one of their criminal operations was Watson working for as an enforcer? A simple question that could have resolved all this, but it was never asked. Now, Payman said, yeah, you know, Watson's a car thief. But it then went on to say, but you know, the police kept trying to get me to say he did other things. And I just said, no, I don't know that. The inference there is they were trying to get someone to say that, you know, Watson is part of this drug deal. And, you know, Payman wouldn't say it. Um, Bailey, who was admitted, you know, he lied, cut a deal with the government, you know, Bailey didn't say it. Right? Well, what if we have a factual situation where, uh, these, uh, uh, criminal actors, uh, all mixed up together in multiple illegal activities and multiple overlapping, uh, conspiracies, uh, uh, couldn't, uh, uh, jury easily, um, reasonably conclude that, uh, they were acting in tandem, um, virtually equally with, uh, in connection with all those criminal activities, uh, rather than having to separate, um, separate them in the way that you're suggesting. They could, they might suspect, but that's, that's, that is not a rational inference beyond a reasonable doubt. There, I guess, remember the old scintilla test? Um, we don't have a scintilla of evidence that makes the connection between Watson and the drug conspiracy. There could have been all kinds of evidence presented that would have permitted rational inference, sufficient for the jury to make this connection, but there wasn't any. And I don't know why that wasn't made part of the examination. It could simply have been trouble with those, uh, prosecution witnesses, but that, that gap was never sufficiently jumped for the, for the jury to be able to make a reasonable conclusion that he was tied into the drug conspiracies. Can I, can I switch? Do you mind, do you mind if I switch gears a little bit and ask you about, um, the murder for higher commerce clause challenge? Uh, do you, do you concede that it's under plain air review? Because if it's under plain air review, there seems to be, as you yourself, um, concede in your brief, quite a bit of cases that have rejected this argument. Why wouldn't that be, um, a basis for concluding that there was no plain air? Right. Um, well, in, in part because the general rule, this in fact was an issue in the United States versus bonds case, but pretty much everywhere, jurisdiction can be raised at any time because it goes to the fundamental right of a citizen not to be hailed into court for something the evidence, the testimony that, um, Wasson was, uh, uh, in connection with being Belcher's enforcer was seen at Belcher's drug distribution headquarters with a gun and that, uh, Wasson traveled with Brown while he was engaging in drug distribution activities. Why wouldn't that be enough for the jury to conclude that, uh, Wasson, uh, was, was involved in, in drug, uh, drug, uh, illegal drug activities? Um, the general fallback argument balance counsel always makes again is just being there is not enough. There has to be some additional element, uh, being seen at the drug house, even with a gun, you know, he's there. That wouldn't be sufficient to tie him to the conspiracy. Um, and I don't believe there was sufficient testimony that he would go with Brown. I mean, they, and Brown, I think he only first met Brown at that initial meeting at Zeidman's pawn shop, where supposedly they discussed, uh, the murder for hire scheme. And, and again, noting the testimony there is, well, they talked about killing Wallace and I think Belcher's, the word about Belcher was he was getting in the way of my money. I mean, there was no testimony that they were talking about getting into Belcher, uh, I'm sorry, shooting Wallace relating to Belcher's drug conspiracy. The, uh, I guess you're, um, out of time, unless you want to take some, some of your rebuttal time, uh, to continue. Um, I'll just continue it for, well, just, okay. Then I'll take 30 seconds. The, the issue with even Belcher's motivation, they're talking about Wallace collaborating with the DEA. Since Wallace and Belcher were connected on these car fraud schemes, I'm sure they were worried that he might then say, look what we're doing with this illegal activity. But that doesn't mean that Wallace even had much information regarding Belcher's drug conspiracy. So he couldn't have offered that up as part of a plea deal with the DEA. So there are all these gaps that just don't cross. And I would submit that's one. So thank you. Thank you very much. And we'll hear from the government. Um, Ms. Currie. Good morning, your honor. May it please the court. Jessica Currie on behalf of the United States. Wallace's murder was the centerpiece at trial, but there was also a drug conspiracy. Bailey and Belcher wanted Wallace killed because he was interfering with their scheme involving car trafficking. Watson was the hired gun. He was an enforcer in Belcher's drug business, and he learned the motive for the hit. That was sufficient evidence for the jury to conclude that Watson joined the conspiracy and murdered Wallace to further it. So his drug-related convictions should be affirmed. I want to focus on the facts surrounding this drug conspiracy. Bailey and Wallace originated the scheme. They relied on Wallace's drug business to get drug addicts to sign for cars, and then they would sublease these vehicles to drug dealers and other criminals who made their money on the street. This provided a valuable service to these criminals who didn't have documented income. So they could not just enter a dealership and obtain a vehicle on their own. And in this way, Wallace and Bailey were able to sublease these cars at inflated prices, and it was a profitable scheme for these two. Bailey testified that the car fraud and the drug business went hand in hand. The drug trafficking facilitated the car fraud. So this was a single scheme. Belcher was also a drug dealer, and he joined the scheme later in 2015. He functioned in the same way as Wallace. He relied on his drug business to facilitate the fraud. Watson entered the picture through Belcher. Watson worked for Belcher as an enforcer. He was seen armed at Belcher's drug house, where Belcher sold cocaine and prescription pills. And there's a suggestion that there was not evidence that supported the idea that Watson was an enforcer in a drug business. I disagree with that suggestion by the defense. And I want to be careful to distinguish between the words from the witness stand and the reasonable inferences that the jury was permitted to draw. Bailey testified that Watson worked for Belcher. He used the word worked. Separately, he testified that Watson was an enforcer. And separately, he testified that Belcher was in the business of selling drugs. So it was simply a matter of putting those pieces of testimony together. The pieces fit. It's actually not much of an inference because there aren't any gaps to fill. The jury could easily conclude from that testimony that Watson was an enforcer specifically in Belcher's drug business. And that's a sufficient connection to the drug conspiracy under the standard of review, certainly. It does seem like there's a large amount of evidence about the shooting, but there isn't all that much evidence about the drug dealing in this case. Do you think that the fact that he was seen at the drug house with a gun would be enough under Jackson? I agree that I think your adversary on the other side would say there's no direct evidence tying Watson to the drug dealing. And so I guess I think your point is you have to rely on an inference. Do you think that that inference is enough to distinguish a conspiracy from a mere association? The fact that you're at the house with a gun? Yes. And it is enough. It is sufficient. And the reason it's sufficient is that it's not just a sighting of Watson at a drug house with a gun. It's the totality of Bailey testifying that it's his understanding that Watson holds a specific role within the drug conspiracy. And then he sees him acting in conformity with that role. So seeing him at the drug house, it's not just that in isolation. That's actually illustrative of the role that Bailey understands Watson to hold. Further, being the hitman is actually consistent with being an enforcer as well. Enforcers undertake the dirty jobs in a criminal enterprise. Murder, to the extent it's needed in a criminal enterprise would be the dirtiest job of all. It was not a coincidence that Watson was selected for that job. Him along with Brown, who also worked for Belcher. The fact that those two were paired up to carry out the hit was not a coincidence. The jury could have looked at the totality and realized this was an inside job, a job inside to the conspiracy. And on balance, that would certainly be enough to satisfy this efficiency standard under Jackson versus Virginia, benefiting from all of the reasonable inferences in that testimony. And with respect to the car fraud and the drug trafficking going hand in hand, it was more than just drug contacts. There were actual transactions, drug transactions that occurred in the context of this overall scheme. In one instance in the record, a vehicle was traded for drugs. Wallace pocketed the money. That was one of the events that was thought of as him playing games. This was one of the things that led to his murder. In addition, there's evidence in the record that a sample of cocaine was provided to a manager at a dealership. So that's, again, a transaction of drugs. And it was transactions like that that motivated a manager at a dealership to look the other way, to bend the rules. And it allowed this car fraud scheme to be successful. It allowed them to pull it off. So these very much went hand in hand. Belcher was the drug side of it. That's the expertise that he brought to the overall scheme. And Watson and Brown were connected through Belcher. Can I ask you, do you think that on the second count that the use of a firearm during and in drug trafficking crime as your drug conspiracy, do you think there's a mens rea element to that, that the defendant needed to know that the firearm was being used during and in relation to the drug conspiracy? Or do you think just the mere fact that there was the use of the firearm and Belcher had the purpose to murder Wallace because of the drug conspiracy is enough? That's the first question, a legal question. The second one, maybe we don't have to answer that because there's enough circumstantial evidence to think that the defendant actually knew that that was the purpose. To answer your first question, I do not believe there is an additional mens rea. I don't believe there's two mens rea requirements. I believe he needed to knowingly have the firearm. So that's certainly the mens rea for that. And in our case, it needed to be premeditated murder, which was shown as for knowledge that it was in furtherance of a drug trafficking, looking at the pattern instructions. And I do not believe that is an element. However, as Judge Murphy pointed out as well, there is evidence to show that he knew it was in furtherance of the drug trafficking crime. Anyway, at this evening's meeting, in advance of the murder, the question was posed, you know, about why Wallace needs to be killed. And the answer was that he was getting in the way of the money. And that's the money that was generated in this scheme involving both car fraud and drug trafficking. Because Watson and Brown worked for Belcher, they knew how Belcher made money. He made money selling drugs. And so if somebody needed to be eliminated because they were getting in the way of the money, the national conclusion is that murdering him would further would promote would benefit or some way facilitate the drug trafficking. And that would be sufficient even if the court were to find there was an I want to touch just briefly on the jurisdictional argument. I agree with Judge Murphy that the plain error standard of review is really dispositive here. The defense, all but concedes that there is no authority directly supporting his position. And, and that is fatal to a claim under plain error review. And so the court doesn't really even need to dive deeper into the issue to the extent there are cases pending on bond that might bring that issue up. It's just not going to succeed under the plain error standard of review. Just a few little things I wanted to comment on in response to the defense. You know, the fact that Watson was a car thief, there's some evidence in the record as to that. Of course, that's not necessarily to the exclusion of anything else, being a car thief, and, and being involved in a drug conspiracy, those things aren't mutually exclusive. There was sufficient evidence to show that he was involved in a drug conspiracy. And that was all that mattered. Unless the court has any further questions, I will simply conclude that there was sufficient evidence under the standard of review with the benefit of all reasonable inferences that Watson joined this conspiracy, and then he murdered Wallace in furtherance of it. And the murder for higher conviction should be affirmed as well, because under plain error review, there is no constitutional argument that can see that can succeed. Thank you. One last question, if you don't mind. It's on the jury instruction, which is sufficiency slash jury instruction on the murder for hire. I was curious if the government had an official position on what the language actually meant. So the murder for hire statute says, any facility of interstate or foreign commerce criminalizes using any facility of interstate or foreign commerce with the with intense that a murder be committed in violation of the laws of any state or the United States. Do you does that? Does the government take a position on whether that's just murder in the abstract or whether we should look at the murder laws of the state in which the murder allegedly occurred? It seems to me to be somewhat ambiguous on I mean, I guess the best reading would be just like, if it violated murder in the in any state that would be enough. But that seems somewhat strange. I was curious if you had a position on that. Well, in this case, the government's theory and the theory that succeeded succeeded on was that it was a violation of Michigan law. This murder was first degree murder under Michigan law. It was important that the jury instruction laid out those elements, which it did. There was no substantive deviation whatsoever with the elements of the crime and the pattern jury instruction under Michigan law. I think the jury instruction argument that was made is is about some of the lead up language. There was a desire on the part of the district court to streamline that. So rather than say, violation of Michigan law or first degree as defined in Michigan law, the court simply said violation of law and murder as defined under the law. So it eliminated some repetitive words, perhaps. But the important thing was that the elements that the jury was instructed on comport fully with the pattern jury instructions. And so there was no way for the jury to convict Watson of anything less than first degree premeditated murder under Michigan law. Yeah, it doesn't necessarily have to be Michigan law, though, because it says of the laws of any state. That's what I was confused by. But it probably doesn't matter in this case. Thanks. Sure. And just one other thing on that, to the extent this might clarify it, but as charged in the indictment, the government did say Michigan law instead of any state. And again, I think the reason is that this murder occurred in Michigan. Thank you. All right. Thank you. We'll hear rebuttal at this point. I think you muted. My apologies to the court. The just going back, the statute reads the way it does. So having been indicted or having committed a murder under the laws of Michigan and the way the statute is written, there needs to be some proof that this is a murder committed under this set of laws or some set of laws, because now you've got a problem on unfair constructive amendment of the indictment. Because what is the defendant protect himself against? And given that every state seems to have a different murder statute in some way, that becomes an important way to prevent unfair surprise. And so we would suggest that should have been both in the instructions as well as some proof put on to the jury, which would have been I mean, could have been certified as judicial notice to the court regarding the jurisdictional argument for an argument three on the murder for a murder. I would say that there is authority for this. And it goes back and please don't peg me as an originalist. But the founding fathers, when they created the Constitution, put in the main body of it, this idea of a separation of federal and state powers and jurisdictions. Commerce Clause has grown over the years. But what we submit is that it has now reached the point because of the pervasiveness of these devices, you no longer have it, there's a distinction, but no difference between. And we cite to this court's opinion, as followed by the US Supreme Court in the United States versus Carpenter, because there they took a sort of subtle doctrine, third party possession of information. There's no reasonable expectation of privacy. And they then said, No, this is these technologies have so changed our, our lives, we have to look at going back to the original intent to protect the privacy of the citizens as set out in the Fourth Amendment to the Constitution. We have to now make this change. We have to say no, you, you need a warrant to go get these global bodies of massive information. And they were careful to say to very limit that scope in Carpenter, because we're starting out something new. What does this mean? But they were talking about cell phones, and cell phones were the source of arguable federal jurisdiction here. Because that's what everybody has. And that's what they have. It's a and we but Council Curry is correct. You know, we cite a number of cases, there is nothing directly on point. But we submit that together, they show the importance of trying to preserve the distinction between state jurisdiction and federal jurisdiction within the United States. And lastly, we, you know, there was a lot of talk regarding this, you know, this shooting and why it was, but, you know, Brown and Watson had never met each other until they met at Zeedman's, there were, you know, there was testimony, he was an enforcer, but not enforcing what given the many criminal enterprises that Belcher had. And forgive me, this is not meant to disparage Elon Musk. But this is sort of like the way he has so many multiple business enterprises from an electric car to a starship rocket. These are different activities, they're different operations. And so it would have been simple to ask, what was Watson an enforcer for, there is not sufficient information here to let it be an inference for this criminal activity of drugs, as opposed to that criminal activity of tax fraud, which is very lucrative. And then this car fraud, a car leasing business, we just don't know, there was no evidence. So there can be no inference. So thank you very much for your time today. Thank you, Councilor Kerr. Thank you very much and some good arguments and the case is submitted.